UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                    Criminal No. 06-cr-20411-3
                                                                      Civil No. 12-cv-13906

DARRYL PIERCE,

     Defendant.

                                                         /

**OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE,
DENYING MOTION FOR APPOINTMENT OF COUNSEL,
DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING DEFENDANT'S
APPLICATIONS TO PROCEED IN FORMA PAUPERIS**

Defendant Darryl Pierce entered a plea of guilty to his involvement in a drug-related kidnapping and murder, with an expectation of a favorable sentencing recommendation in exchange for his truthful testimony against the co-conspirator who pulled the trigger (which was, in fact, pulled several times).  Before the trial occurred, Defendant was caught in a monumental lie.  He had falsely implicated one co-conspirator as the perpetrator; it was, in fact, a different co-conspirator.  The recommendation for leniency was properly withheld, and Defendant received a stiff sentence, although not the worst that could have been imposed.  He was represented by experienced counsel all the while.

On September 4, 2012, Defendant filed a *pro se* motion to vacate sentence pursuant to 28 U.S.C. § 2255.  Pierce is currently incarcerated at the federal correctional institute in Big Spring, Texas, and challenges his conviction for conspiracy

with intent to distribute controlled substances and with killing a person while engaged in an offense punishable under 18 U.S.C. § 924(c).  He alleges ineffective assistance of counsel.  Attached to Defendant's motion to vacate is a "Motion Requesting the Appointment of New Appellate Counsel to File Direct Appeal."  Defendant also filed two separate applications to proceed *in forma pauperis*.  For the reasons set forth below, the court will deny the motion to vacate sentence, deny the motion for appointment of counsel, deny a certificate of appealability, and deny Defendant's applications to proceed *in forma pauperis*.

## I.  BACKGROUND

On January 3, 2006, a group including Defendant, Rudolph Dalron Williams, Frank Pierce, Derrick Young, and Clarence Jackson, lured Antonio Brown, a drug dealer who was a rival of Williams', to a house located at 12915 Stahelin Street in Detroit, Michigan.  The group jumped Brown and overcame him.  Next, they handcuffed and beat him.  Thereafter, the group transported Brown to other locations and eventually Young shot and killed him.  The vehicle in which Brown was murdered, in which his body lay, was set afire.

The Government indicted all five members of the group that kidnapped Brown on two counts:  conspiracy to possess with intent to distribute, and distribution of, cocaine (21 U.S.C. §§ 846, 841(a)(1)), and killing a person while engaged in an offense punishable under 18 U.S.C. § 924(c), or aiding and abetting in such offense (18 U.S.C. §§ 924(j), 2).

On October 22, 2009, Defendant pleaded guilty pursuant to a Rule 11 plea agreement which suggested that Defendant's sentencing guidelines were 168 to 210

months incarceration based upon an offense level of 35 and criminal history category of I.  In the agreement, Pierce specifically waived his right to appeal any sentence within his guidelines.  Most importantly, however, he entered into a cooperation agreement in which the Government agreed to move the court for a downward departure to the low end of his guideline range if Pierce provided substantial assistance as to criminal involvement of others.

On May 5, 2009, when Defendant first debriefed with the Government, he stated that he watched Williams shoot and kill Brown.  It was a lie:  Young, Defendant's brother and co-conspirator, was the real killer.  Defendant, Young, and Jackson (also related to Defendant as a cousin) maintained the same false story, pinning the act on Williams.  Pierce maintained the lie in his Rule 11 plea agreement as well as in his own testimony, under oath, before the court when he pleaded guilty.  Not until April 8, 2010, did Pierce first admit that Williams was not the shooter.  Defense counsel later stated on the record:  "Judge it is without doubt that Mr. Pierce committed perjury before this Court."  (Pg. ID # 1000.)  Meanwhile, the Government had been preparing for a murder trial against Williams, having been led to believe by the statements of the others that it was he who had killed Brown.

Having determined that Pierce had not provided substantial assistance, the Government not only refused to move for a downward departure under U.S.S.G. § 5K1.1, but also moved for a two level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and for no decrease in Defendant's offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.  The court agreed, and consequently recalculated Defendant's guidelines to be up to 240 months incarceration on Count I

and 360 months to life incarceration on count II.  On January 19, 2011, the court

sentenced Defendant to concurrent terms of 240 months imprisonment on count I and

336 months on count II.  The court credited Pierce, marginally, with eventually owning

up to the truth.  Judgment was entered on January 24, 2011.

On June 9, 2011, Defendant mailed a handwritten letter to the Clerk of this court

who docketed it as a *pro se* notice of appeal.  The Government filed a motion in the

Sixth Circuit Court of Appeals to dismiss Defendant's appeal as untimely because it

was filed over four months after the entry of judgment.  On September 28, 2011, the

Sixth Circuit granted the Government's motion and dismissed Pierce's appeal.

Defendant then timely filed the pending motions.  The motion to vacate sentence

alleges that his court appointed counsel was ineffective for:  (1) not timely filing an

appeal and (2) providing ineffective legal advice by failing to negotiate a more favorable

plea agreement.

## II.  STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the

court which imposed the sentence to vacate, set aside or correct the sentence" on the

ground "that the sentence was imposed in violation of the Constitution or laws of the

United States, or that the court was without jurisdiction to impose such sentence, or that

the sentence was in excess of the maximum authorized by law, or is otherwise subject

to collateral attack."  28 U.S.C. § 2255(a).  As "[§] 2255 is not a substitute for a direct

appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United*

*States v. Frady*, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly

higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456

U.S. at 166.  Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error,

the petitioner must establish an error of constitutional magnitude which had a

substantial and injurious effect or influence on the proceedings." *Watson v. United*

*States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619,

637-638 (1993)).  Though non-constitutional errors are generally outside the scope of

§ 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a

defendant can prevail on a § 2255 motion alleging non-constitutional error "by

establish[ing] a 'fundamental defect which inherently results in a complete miscarriage

of justice, or, an error so egregious that it amounts to a violation of due process,'"

*Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th

Cir. 1990)) (internal quotation marks omitted).

## III.  DISCUSSION

### A.  Ineffective Assistance of Counsel

Defendant asserts that his court appointed counsel was ineffective for two

reasons.  First, Pierce asserts that his counsel did not appeal his sentence.  Second, he

alleges that his counsel failed to negotiate a more favorable plea bargain.

To support an ineffective assistance of counsel claim, Defendant must satisfy the

two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the

first prong, Defendant must show that his counsel's performance was deficient, which

"requires a showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.  The

appropriate standard by which to judge an attorney's performance is "simply

reasonableness under prevailing professional norms." *Id*. at 688.  Under the second

prong, Defendant must show that counsel's errors were prejudicial to the defense.  A

defendant may establish prejudice by showing "that counsel's errors were so serious as

to deprive the defendant of a fair trial." *Id*. at 687.  A defendant must show more than

"some conceivable effect on the outcome of the proceeding"; he must demonstrate "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 693–94.  "In deciding an ineffective

assistance claim, a court need not address the two components of the claim in any

order, or even address both components if an insufficient showing is made on one."

*United States v. Cox*, 826 F.2d 1518, 1525 (6th Cir. 1987) (citation omitted).  Each of

Pierces's claim will be addressed in turn.

### 1.  Filing an Appeal

Defendant first alleges that his court-appointed counsel's failure to directly

appeal his sentence amounted to ineffective assistance of counsel.  The Government

argues that Pierce waived his right to appeal his sentence in the Rule 11 plea

agreement, and thus, his counsel was not ineffective.

Defendant did in fact waive future challenges to his sentence when he signed

the plea agreement.  The agreement states:

> If the sentence imposed does not exceed the maximum recommended by
> Part 3 of this agreement, Defendant waives any right he has to appeal his
> conviction or sentence.

(Pg. ID # 708.)  Part 3 states:

> Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) the government makes a non-binding recommendation that the sentence of imprisonment be no more than the mid-point of the sentencing guideline range advocated by the government as described in Paragraph 2B.

(Pg. ID # 707.)  The description of the mid-point of the sentencing guideline range in

Paragraph 2B states:

> B. Agreed Guideline Range
>
> There are no sentencing guideline disputes.  Except as provided below, the parties recommend that the defendant's guideline range is 168–210 months, as set forth on the attached worksheets.  If the Court finds:
> . . .
>
> b) that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense(s); or obstructed justice or committed any crime,
>
> and if any such finding results in a guideline range higher than 168–210 months, the higher guideline range becomes the range recommended by defendant and government.  The court is not bound by this recommendation concerning the guideline range, and the defendant understands that he will have no right to withdraw his guilty plea if the court does not follow this recommendation.

(Pg. ID # 707–06.)

The court properly sentenced Pierce to concurrent terms of 240 months imprisonment on count I and 336 months on count II.  At Defendant's sentencing hearing, the court relied on his presentence report which suggested a range of 360 months to life imprisonment (on count II) due to a two level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and no decrease in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.  (Pg. ID # 998.)  A defendant who

lies to the court or to investigators may properly be assessed a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  *See, e.g.*, *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2004) (ruling that a defendant who pleaded with the court to allow him to remain free on bond so he would not lose his job was properly assessed a two-level enhancement where Defendant had already been fired from his job). Defendant lied to the Government at his initial debriefing when he stated that Williams, and not Young, shot and killed Brown.  Pierce maintained this lie in his Rule 11 plea agreement and under oath at his plea colloquy.  On the basis of this lie, and with the help of Defendant's promised testimony at Williams' murder trial, the Government was prepared to subject Williams to a sentence of life without parole for killing a man he did not kill.  As such, the court properly assessed a two-level enhancement for obstruction of justice.  Similarly, the court properly denied Pierce any reduction in his offense level for acceptance of responsibility.  The sentencing guidelines permit a downward adjustment, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1.  However, a defendant "who receive[s] enhancements for obstruction of justice [is] not considered eligible for acceptance-of-responsibility credit except in extraordinary cases."  *United States v. Frost*, 521 F. App'x 484, 492 (6th Cir. 2013) (citing U.S.S.G. § 3E1.1 cmt. n.4.)  Moreover, it is well established that the defendant bears the burden of proving the extraordinary nature of his case.  *Id*. (citations omitted).  Defendant has not met his burden as he has provided no facts to suggest that his case fits within the narrow exception to the general rule that bars a defendant who obstructs justice from receiving credit for acceptance of responsibility. *Id*. (citations omitted).

Prior to sentencing, Defense counsel met with Pierce and reviewed the waiver of appeal contained in his plea agreement. (Pg ID # 1376.) As noted earlier, in reliance on the presentence report, the Court correctly calculated Defendant's guidelines as 360 months to life incarceration. When asked, Defense counsel did not object to the presentence report's guidelines calculation. (Pg. ID # 997.) Moreover, the following exchange at Defendant's plea colloquy confirms that he was aware that the sentence imposed could be higher than 168–210 months even before the Government determined that he had lied about the shooter:

> THE COURT:  All right. Now, here is the final thing about guidelines and sentencing.  Judges often perhaps will give a defendant a sentence that is within a sentencing guideline range. I may, I fairly often do, I notice recently. But the law states that I am not required to stay within a sentencing guideline range.  It is possible for me to sentence a person below the guideline range minimum, or above the guideline range maximum if that's what I think is appropriate in that individual's case.  In your instance, I notice that the Government has committed to make a recommendation of a certain amount or a certain level of a guideline range sentence.  Again, I will take the Government's recommendation, or your attorney's recommendation and will seriously consider it. I will not, however, make any guarantee that am going to follow exactly any particular recommendation for sentence.  Do you understand that, sir?
>
> THE DEFENDANT:  Yes.

(Pg. ID # 738.)

Because the court sentenced Pierce in accordance with his plea agreement, his waiver of his right to appeal bars any Sixth Amendment challenges to his sentence.  "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir.2005) (quotations omitted).  Indeed, the Sixth Circuit has made

clear that such waivers are enforceable as to a criminal defendant's right to appeal his sentence. *United States v. Smith*, 344 F.3d 479, 483 (6th Cir.2003). The Sixth Circuit has also held that a defendant's "informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (citing *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)); *see also McGilvery*, 403 F.3d at 362-63 (enforcing waiver of right to appeal after determining that Defendant understood his decision). Defendant does not allege that his guilty plea included a waiver that was not "informed and voluntary" and has made no attempt in the instant motion to challenge his guilty Plea. Thus, Defendant's § 2255 raises claims "that simply relate to issues a defendant has validly agreed not to appeal or attack collaterally, from those that go to the very validity of a guilty plea." *Acosta*, 480 F.3d at 422; *see also United States v. Berro*, 348 F. App'x 98, 102–03 (6th Cir. 2009) (stating that where the appellate waiver was valid, the defendant waived his ability to challenge his sentence, which fell within the time line specified in the agreement).

Defendant waived his right to appeal and therefore Defense counsel did not provide ineffective assistance of counsel by failing to appeal on his behalf.

### 1. Negotiating Defendant's Plea Agreement

Defendant next argues that his attorney was ineffective because he should have negotiated "a more reason[]able plea agreement." (Pg. ID # 1324.) The Government argues that Defense counsel negotiated a favorable plea agreement on behalf of Pierce.

The *Strickland* standard applies to claims of ineffective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). In the context of an accepted plea bargain, under the prejudice prong, Defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. Pierce has not met his burden because he does not argue that he would have gone to trial but for his counsel's errors. Instead, he argues simply that his counsel could have gotten him a better deal. Regardless, a review of the plea agreement reveals that it was in fact reasonable.

The plea agreement provided Defendant with a reduced charge as well as the potential for a downward departure. Prior to negotiating a plea agreement, the second superseding indictment charged Defendant with killing a person during the course of a drug conspiracy and specified that the murder was "willful, deliberate, malicious and premeditated," i.e., first degree murder. (Pg. ID # 232.) This charge carried a penalty of mandatory life imprisonment. *See* 18 U.S.C. §§ 924(j)(1), 1111(b) ("Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life."). Defense counsel effectively negotiated a plea in which Pierce would plead guilty to a reduced charge, pursuant to a fourth superseding information, of second degree murder which carries a penalty of up to life imprisonment, not mandatory life imprisonment. *See* 18 U.S.C. §1111(b) ("Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life."). Next, as memorialized in the cooperation agreement, Defense counsel persuaded the Government to move for a downward departure if Pierce provided substantial assistance. However, as stated above, he lied to the Government, perjured himself before the court, and was prepared

11

to commit further perjury and testify that Williams shot and killed Brown. Therefore, Defendant did not provide substantial assistance and the Government declined to move for a downward departure. Ultimately, Pierce still received a sentence of 336 months imprisonment, below his guidelines calculation of 360 months.

Because Defense counsel negotiated a reasonable plea agreement and Defendant has not demonstrated a reasonable probability that he would have pleaded guilty but for his counsel's advise, Defendant has not shown that his attorney was ineffective.

Defendant's motion to vacate will be denied.

**B. Motion for Appointment of Counsel**

Attached to Defendant's motion to vacate is a "Motion Requesting the Appointment of New Appellate Counsel to File Direct Appeal." However, as already discussed, Pierce waived his right to appeal when he signed the plea agreement and thus is not entitled to appellate counsel.

Even if the court construes Defendant's motion as a motion for appointment of counsel for his present motion to vacate, he cannot prevail. Pierce does not have a constitutional right to counsel when pursuing a collateral attack upon his conviction under 28 U.S.C. § 2255. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citations omitted) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."). Instead, 18 U.S.C. § 3006A provides that the court may appoint counsel for a person seeking relief under 28 U.S.C. § 2255 if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Additionally, a defendant is

12

entitled to counsel when an evidentiary hearing is required in a § 2255 proceeding.  *See*

R. Gov. § 2254 Cases 8(c).  The court is not persuaded that the interests of justice

require appointment of counsel or that an evidentiary hearing is necessary in this case.

Defendant's motion for appointment of counsel will be denied.

### B.  Applications to Proceed *In Forma Pauperis*

Defendant has also filed two separate, but practically identical, applications to

proceed *in forma pauperis* (IFP).  He filed the first application five days before filing his

motion to vacate and the second contemporaneously with that motion.  In both

applications, Pierce seeks copies of all indictments, a copy of his plea agreement, and

a copy of the transcript of his sentencing hearing.  Defendant does not describe his

specific need for these documents in the IFP applications.  However, in his § 2255

motion to vacate, after listing the grounds of error, he states: "more grounds to follow

once transcripts are received from the clerk of court."  (Pg. ID # 1234.)

Under 28 U.S.C. § 753(f), a court may require that the United States pay for a

transcript requested by a § 2255 movant:

> Fees for transcripts furnished in proceedings brought under section 2255 of
> this title to persons permitted to sue or appeal *in forma pauperis* shall be paid
> by the United States out of money appropriated for that purpose if the trial
> judge or a circuit judge certifies that the suit or appeal is not frivolous and
> that the transcript is needed to decide the issue presented by the suit or
> appeal.

28 U.S.C. § 753(f).  Moreover, any request for a free transcript prior to the filing of a

§ 2255 motion is premature and will be denied.  *United States v. Alcorn*, 10 F. App'x

248, 249 (6th Cir. 2001.)  Pierce's first IFP application was filed before his § 2255

motion and thus was premature and will be denied.  His second IFP application will also

be denied because, as discussed herein, the court cannot certify that Defendant's

claims are "not frivolous."

Moreover, Defendant has not demonstrated a particularized need for the

documents he seeks.  Instead, he states that once he receives transcripts, "more

grounds [are] to follow."  (Pg. ID # 1234.)

> If the Court is not given the benefit of some definite allegation as to the
> nature of the alleged illegal aspects of the judgement and sentence, it is but
> natural to surmise that this a fishing expedition and that the present vague
> allegation of illegality is not made in good faith.

*Culbert v. United States*, 325 F.2d 920, 922 (8th Cir. 1964) (quoting *United States v.*

*Lawler*, 172 F.Supp. 602, 605 (S.D. Tex. 1959)); *see also Bentley v. United States*, 431

F.2d 250, 252 (6th Cir. 1970) (explaining that a defendant is not entitled to free

transcript to search for grounds to file a motion under § 2255).

Defendant's IFP applications will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not

proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  A

COA may be issued "only if the applicant has made a substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is

satisfied when a defendant demonstrates "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*,

529 U.S. 473, 484 (2000).

In this case, the court concludes that reasonable jurists would not debate the court's assessment of Defendant's claims.  Therefore, the court will deny a certificate of appealability.

## V.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's motion to vacate sentence [Dkt. # 295] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for appointment of counsel [Dkt. # 295] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED as to all of Defendant's claims.

Finally, IT IS ORDERED that Defendant's applications to proceed *in forma pauperis* [Dkt. ## 294, 297] are DENIED.

                    s/Robert H. Cleland
                    ROBERT H. CLELAND
                    UNITED STATES DISTRICT JUDGE

Dated:  February 28, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 28, 2014, by electronic and/or ordinary mail.

                    s/Lisa Wagner
                    Case Manager and Deputy Clerk
                    (313) 234-5522